UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHOENIX ENERGY SALES CO.,

                      Plaintiff,

                                                CIVIL CASE NO. 96-40391

v.

WILLIAM GREIG, et al.,                     HONORABLE PAUL V. GADOLA
                                                       U.S. DISTRICT COURT
                      Defendant.
_____/

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

      Plaintiff, Phoenix Energy Sales Co., brought this breach of contract and breach of guarantee action against Defendants Randy Goodman and James Carmody, their corporations, Clinton Gas Marketing, Inc. ("CGM") and Natgo, Inc., and William Greig. The claims arise out of Defendants' alleged failure to pay for natural gas which was delivered by Plaintiff between May, 1995, through June, 1996. Only Defendant William Greig remains before the Court.

      After years of proceedings, the Court held a joint final pretrial conference on January 19, 2006. During that conference, a dispute arose between the parties regarding whether Plaintiff's alter ego theory was properly before the Court. After considering the matter, on February 10, 2006, the Court issued an order allowing Plaintiff to amend its complaint to include the alter ego theory predicated upon a fraud claim. Plaintiff filed an amended complaint (second), on February 21, 2006. Defendant Greig responded with a motion to dismiss and/or motion for summary judgment on April 24, 2006. It is this motion that is presently before the Court. Greig argues that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. However, as explained

below, there are genuine issues of material fact. Therefore, the Court will deny Greig's motion for summary judgment.

## I. Background

In October, 1994, Plaintiff began supplying gas to CGM on an invoice basis due to the personal guarantee of Greig. In the guarantee, dated October 3, 1994, Greig provided Plaintiff with a one year guarantee of $125,000.00 in order to induce Plaintiff to sell natural gas to CGM on an open account. Greig then obtained a perfected security interest in CGM's inventory, accounts, contract rights, general intangibles, and proceeds. Greig also entered into a set of consulting, agency, and lock box agreements with the corporate defendants. On one occasion, Greig loaned the corporate defendants $180,000, in exchange for a second security interest in all the assets of CGM and Natgo and a second set of consulting, agency, and lock box agreements.

Although Defendants were selling copious amounts of natural gas, they started to lose money as natural gas prices escalated. Defendants were losing money because they purchased gas from Plaintiff at variable market prices, yet sold that same gas to customers at fixed prices. By March, 1996, Defendants had generated a debt to Plaintiff in excess of $500,000.

Shortly before, however, Greig began exercising his rights under the second security agreement, demanding payment from CGM due to an alleged default of the provisions of that agreement. Greig ultimately instituted a foreclosure action against CGM and Natgo in Oakland County Circuit Court. The action was uncontested and the corporations allowed Greig to foreclose on all their assets. Greig then assigned those assets to Antrim, a company he had formed only days earlier, and began selling CGM's former gas supplies, to CGM's former customers, out of CGM's

former offices, employing CGM's former employees. Plaintiff alleges that all of this was an orchestrated maneuver to avoid paying CGM's sizable debt to Plaintiff.

On November 5, 1996, Plaintiff filed a complaint against Defendants for breach of contract and breach of guarantee. Plaintiff has so far obtained a default judgment against the corporate defendants and reached a settlement with Carmody, leaving Greig as the only remaining defendant.

The claim against Greig was administratively closed on December 1, 1998, due to Greig's filing for Chapter 13 bankruptcy relief. Greig dismissed the Chapter 13 bankruptcy case and an involuntary Chapter 7 case was filed against him. The Chapter 7 case was dismissed in exchange for Greig's agreement to proceed to arbitration. The Honorable Walter Shapero, United States Bankruptcy Judge, issued a stipulated order to that effect on August 24, 2000. This Court, however, granted Plaintiff's request to reinstate trial proceedings because Greig refused to cooperate with the arbitration process.

Following the final pretrial conference on January 19, 2006, Plaintiff was allowed to add two claims, Count III formally alleging an alter ego theory,[1] and Count IV alleging fraudulent conveyance in violation of M.C.L. 566.11. Defendant's motion to dismiss and/or motion for summary judgment is now before the Court. Greig argues that there are no genuine issues of material fact with respect to either Count III or Count IV.

---

[1] In its February 10, 2006 order allowing Plaintiff to amend the complaint, the Court recognized that, up to that point, Plaintiff had proceeded throughout the lawsuit as if the alter ego theory was already before the Court. In fact, no such claim had been formally presented. The Court likewise noted that Defendant had responded to the then unasserted claim. Accordingly, the Court allowed Plaintiff to add the claim in a second amended complaint.

**II.      Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as to a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id*. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id*. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id*.; *Feliciano v. City of Cleveland*, 988 F.2d

649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**III. Analysis**

Defendant Greig argues that Plaintiff's two new claims must fail. Defendant argues that Count III, Plaintiff's alter ego theory, must fail because Defendant did not dominate or control

CGMI. *See Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007). The Court finds that it need not address Defendant's motion for summary judgment with respect to Count III because the Court has already addressed that issue in its order of November 8, 2004. Order Denying Mot. for Summ. Judg., p. 1 [docket entry #164] ("[T]here are genuine issues of material fact, namely . . . whether Antrim is an alter ego of CGMI."). There is no evidence that further discovery between the parties has taken place or that the Court should otherwise revisit that finding. Consequently, Plaintiff's claim with respect to the alter ego theory will go forward.

In support of his motion for summary judgment as to Count IV, fraudulent conveyance, Defendant argues that the claim must fail because Plaintiff cannot carry the burden of establishing that Defendant obtained the rights and assets of CGMI without giving fair consideration. *See* M.C.L. 566.13, *repealed by* 1998 Mich. Pub. Acts 434 (Act both repealing the Uniform Fraudulent Conveyance, M.C.L. 566.1, *et seq.*, and replacing it with the Uniform Fraudulent Transfer Act, M.C.L. 566.31, *et seq.*). More specifically, Defendant alleges that Plaintiff has failed to specifically set forth the factual basis for a claim that the assets turned over to Greig were not the "fair equivalent" to the antecedent debt that was relieved. *See* M.C.L. 566.13(a). Furthermore, Defendant argues, Plaintiff has not set forth that the antecedent debt satisfied was "disproportionately small" when compared to the value of assets delivered to Greig. *See* M.C.L. 566.13(b). In support of this argument, Defendant alleges that CGMI's debt to him was approximately $239,000. However, in return for that debt, Defendant Greig acquired CGMI's accounts receivable, valued at only $109,000. Therefore, according to Greig's account, he received far less than a "fair equivalent" value of property in return for the antecedent debt relieved. Finally, Defendant asserts that although

6

Plaintiff alleges that Defendant had fraudulent intent, Plaintiff has failed to provide any support for that claim.      Plaintiff's version of the facts differs substantially.  In his response to Defendant's motion, Plaintiff alleges that CGMI was initially indebted to Defendant upon the secured loan in the sum of $180,000.  However, because of the various payment schemes that had been constructed under the security and lock box agreements, Defendant had already been repaid nearly $80,000 of that $180,000 outstanding loan balance.  Then, according to Plaintiff, when Defendant foreclosed on the loan, the loan that Plaintiff claims was being paid to Defendant in a timely manner, Greg received all the corporate defendant's accounts receivable, valued at an estimated $70,000, *see* Pl's Resp., Ex. B, p.1; all the tangible assets of the corporation, valued at $359,283 based upon CGMI's tax filing of 1995, *see* Pl's Resp., Ex. C, p. 8; and Plaintiff claims that Defendant converted more than $137,000.00 in natural gas.  *See* Pl's Resp., Ex. D, pp. 1-4.  Therefore, according to Plaintiff's version of the case, the debt relieved was "disproportionately small" and was not a "fair equivalent" to the assets received by Greig.  *See* M.C.L. 566.12(a), (b).

Additionally, Plaintiff claims that the fraudulent intent is clearly indicated by the nature of the asset transfer. Plaintiff claims that at the time of the transfer, the corporate defendants were more than $500,000 in debt.  Despite this outstanding debt, and even though the payments to Defendant were being paid in a timely manner, the corporate defendants willingly allowed Defendant to foreclose on the debt and to acquire all the assets of the corporate defendants.  Then, Greig assigned all the newly acquired assets to Antrim, a company he had formed only days earlier.  Antrim and Greig then began doing business out of the former company's office, supplying the former company's customers, and hired only two employees, Carmody and Goodman, both from the former

7

company.

A review of the facts supplied by the respective parties reveals divergent accounts of the events that transpired. Therefore, after examining all the available evidence, the Court finds that there are genuine issues of material fact. There is a genuine dispute as to the value of the corporate defendants antecedent debt and the value of the assets acquired by Defendant through the unfettered debt foreclosure, and a dispute as to whether the conveyance was completed to hinder, delay or defraud Plaintiff.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment and/or motion to dismiss [docket entry #176] is **DENIED**.

**SO ORDERED.**


Dated:     March 30, 2007            s/Paul V. Gadola
                                     HONORABLE PAUL V. GADOLA
                                     UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on      April 3, 2007    , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:               Thomas W. Elkins; David A. Lerner; Henry J. Mittelstaedt, III      , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                          .

                                              s/Ruth A. Brissaud
                                              Ruth A. Brissaud, Case Manager
                                              (810) 341-7845